LAPOINTE v. CHEVRETTE.

1. MASTER AND SERVANT—NEGLIGENCE—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE—MINORS. ·
   In action by 15-year old boy against his employer for injuries resulting from alleged negligence, age of plaintiff and his tendency to defer to judgment of his superior are proper considerations in determining questions of negligence, assumed risk, and contributory negligence.

2. SAME—OBVIOUS DANGERS.
   Generally, employee assumes risk of obvious dangers incident to his employment, and it is not negligence for employer to direct him to perform services risks of which are apparent to, and appreciated by, employee.

3. Same—Right of Servant to Rely on Master's Assurance.

Servant acting in obedience to command of his superior to do particular act, upon assurance of one giving it that there is no danger, may rely on such assurance, and master will be liable for resulting injuries.

4. Same—Directed Verdict.

Where superior ordered 15-year old boy to accompany him in making deliveries with truck on cold, stormy afternoon, and, when boy objected because he was not properly clothed, was assured that he would be all right, it cannot be said, as matter of law, that there was no negligence on master's part, that boy assumed risk incident to said service, or that he was guilty of contributory negligence in its performance; neither party being fully aware of danger from exposure due to truck becoming stalled and lengthening time required to make deliveries.

5. Trial—Special Questions.

Holding of trial court that special questions submitted to jury were not controlling, and therefore verdict should not be set aside because inconsistent with answers to said questions, *held,* correct.

6. Master and Servant—Negligence.

Where declaration not only charged superior with negligence in ordering 15-year old boy to assist in making deliveries with truck on cold, stormy day, but also in keeping him out in storm knowing that he was inadequately dressed, evidence showing that superior insisted on boy remaining with truck after it became apparent that, owing to storm, much longer time would be required to make deliveries than anticipated, *held,* to warrant jury in finding superior guilty of negligence.

7. Same—Proximate Cause.

Where act is negligent, to render it proximate cause, it is not necessary that one committing it might have foreseen particular consequence or injury or particular manner in which it occurred, if by exercise of reasonable care it might have been anticipated that some injury might occur.

8. Same—Assumptions of Servant.

Boy employed by store manager to work in store and to assist in making deliveries to customers had right to assume that he was rendering services for store owner and not for manager personally.

9. PRINCIPAL AND AGENT—SCOPE OF AGENT'S AUTHORITY.

One dealing with agent, having ascertained general character or scope of agency, is authorized to rely on agent's having such powers as naturally and properly belong to such character, and, in absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations of apparent powers of agent.

10. SAME—MANAGER'S AUTHORITY.

Act of company in establishing and maintaining for length of time store for sale of merchandise, some of which must be conveyed to houses of customers by some sort of vehicle, would justify finding by jury that manager had authority to provide for its delivery; and that it was policy of company to make no deliveries is in no way controlling unless customers and help were informed thereof.

11. APPEAL AND ERROR—QUESTIONS NOT RAISED ON TRIAL NOT CONSIDERED.

Objection to admission of testimony not raised at trial or on motion for new trial may not be considered on appeal.

12. NEW TRIAL—GREAT WEIGHT OF EVIDENCE.

Denial of motion for new trial on ground that verdict was against great weight of evidence is not disturbed, on appeal, where there was evidence to support verdict, although evidence was disputed.

13. DAMAGES—EXCESSIVE VERDICT.

If reasonably within range of testimony, determination of trial judge as to amount of damages to be awarded will not be disturbed, on appeal.

14. SAME.

Verdict of $12,000 for injury to 15-year old boy caused by negligent exposure to cold, resulting in osteomyelitis, an infection of bone, *held*, not excessive, under evidence.

15. PLEADING—SUFFICIENCY OF DECLARATION—AMENDMENT.

In action by guardian for injury to 15-year old boy, motion by defendants for directed verdict on ground that action purports to be brought by guardian for injuries to herself, *held*, properly denied, where meaning of declaration was plain that action was brought for injuries to boy, and any defects in declaration could be corrected by amendment.

Appeal from Delta; Bell (Frank A.), J. Submitted June 16, 1933. (Docket No. 35, Calendar No. 37,245.) Decided October 2, 1933. Rehearing denied January 30, 1934.

Case by Frances LaPointe, guardian of Armand LaPointe, against C. W. Chevrette and Great Atlantic & Pacific Tea Company, a corporation, for personal injuries sustained by plaintiff's ward alleged to have been due to defendants' negligence. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Denis McGinn* and *Thomas J. Rushton* (*H. J. Rushton*, of counsel), for plaintiff.

*Ryall & Frost* and *M. Robert Deo* (*U. S. Young* and *A. C. Unger*, of counsel), for defendants.

SHARPE, J. The defendant tea company had been operating a retail store in the city of Gladstone for several years prior to March 6, 1929. Armand LaPointe, hereafter called the plaintiff, had been employed for some time prior thereto in delivering merchandise and "peddling bills" by a former manager, Lawrence Gross, and its then manager, the defendant Chevrette. He was, at the time above stated, 15 years of age. He was attending school and performed the services above stated after school hours and on Saturdays. When the weather was cold, he would go from the school to his home and put on "a pair of high-topped boots with rubber bottoms, and heavy sweater and heavy leather jacket, and heavier trousers and socks and mittens."

Armand testified that on March 5th the defendant Chevrette told him that he intended to discontinue the delivery of merchandise and that he could work inside the store; that, when he came to the store on

March 6th, Chevrette put him to work piling canned goods on the shelves; that about 5:30 Chevrette asked him "to go out and deliver orders with him;" that he objected to doing so because it was "very stormy," but was told that he had to go because he knew where the people lived; that he then said he would go home and change his clothing, but was told that there was not time for him to do so, that they would be gone but a short time, and that he "would be all right;" that the merchandise, consisting of "sacks of flour and sugar and large boxes of canned goods and things like that," was placed on a truck; that, while Chevrette rode in the cab of the truck with the driver, he was required to ride on the back part thereof, "holding the cover over the merchandise and watching that it would not fall off the truck;" that "there was lots of snow drifted and the truck got stuck and we had to get out and push;" that it became colder, and after a time he told Chevrette that he "was so wet and cold that I couldn't stand it any longer and I wanted to go. He told me we would be only a few minutes more, and I stayed with him;" that he had no mittens or gloves on and his feet and legs became wet, and that they left him about three blocks from his home and he "had a hard time" to get there as he was so wet and cold that he could hardly walk; that he was out about two hours; that he was ill during the night, went to school the next morning, but felt dizzy and was given permission to go home, and went to bed. There was evidence that the night was unusually stormy, and that the people were then using the streets instead of the sidewalks. The distance traveled in making the deliveries was about four miles.

Plaintiff's condition grew gradually worse, and a doctor was called, who found his legs swollen and

that he was suffering severe pain. After treating him for a few days, he recommended that he be taken to a hospital, where he was treated for two weeks, and then taken home in an ambulance. He was later taken to different hospitals and operated on a number of times, once in the State Hospital at Ann Arbor. His ailment was diagnosed by several doctors as osteomyelitis, an infection of the bone, which plaintiff claims was caused by his exposure on the evening of March 6th.

His mother was duly appointed as his guardian, and brought this action to recover the damages incident thereto. She had verdict against both defendants for $26,470.80. Defendants' motion for judgment notwithstanding the verdict, which had been reserved, was denied, as was also their motion for a new trial, conditioned, however, on plaintiff's remitting all in excess of $12,000, which she did, and a judgment was entered for that amount, from which defendants have taken this appeal.

Defendants insist that there was no evidence of negligence on their part; that Armand assumed the risk incident to the service rendered, and that he was guilty of contributory negligence as a matter of law.

It may be stated at the outset that—

"The age of the plaintiff, and his tendency to defer to the judgment of his superior are proper considerations in determining the questions of negligence, of assumed risk, and contributory negligence." *Belmer* v. *Boyne City Tanning Co.* (syllabus), 160 Mich. 669.

The employee in that case was also 15 years of age. As a general rule, an employee "assumes the risk of the obvious dangers incident to his employment" (*Neifert* v. *Metler*, 165 Mich. 354), and it is

not negligent for an employer to direct him to perform services the risks of which are apparent to, and appreciated by, the employee (*Lewis* v: *Phelps*, 256 Mich. 646).

An exception to this rule is noted and considered at length in 18 R. C. L. p. 655 *et seq*. We quote therefrom:

"Another element that may affect an employee's appreciation of the perils of his employment, and consequently his right of recovery for injuries resulting therefrom, is a command by the employer or his representative to do a particular act, or an assurance that the act may be performed without danger. It is a fundamental of the relation of master and servant that the servant shall yield obedience to the master, and this obedience an employee properly may accord even when confronted with perils that otherwise should be avoided. In any case, but more plainly when a command is sudden and there is little or no time for reflection and deliberation, the employee may not set up his judgment against that of his recognized superiors; on the contrary he may rely upon their advice, assurances, and commands, notwithstanding many misgivings of his own. It by no means follows that, because he could justify disobedience of the order, he is barred of recovery for injuries received in obeying it. He is not required to balance the degree of danger and decide whether it is safe for him to act, but he is relieved in a measure of the usual obligation of exercising vigilance to detect and avoid the danger. * * *

"The general principle above expressed applies in case the employee performs the service pursuant to assurances of the absence of danger as well as where the inducement takes the form of a command or order. If, suspecting danger, he demurs to the performance of desired acts, and the employer to

overcome his hesitation assures him that no danger exists, he will be entitled as a rule to recover in case he sustains an injury."

In 39 C. J. p. 485, it is thus stated:

"But a servant acting in obedience to such command, upon the assurance of the one giving it that there is no danger, may rely upon such assurance and the master will be liable for resulting injuries."

The authorities cited in both volumes fully sustain the above statements.

In *Fillippon* v. *Albion Vein Slate Co.*, 250 U. S. 76 (39 Sup. Ct. 435), the court quotes with approval the following from *Williams* v. *Clark*, 204 Pa. 416, 418 (54 Atl. 315):

"If the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably and imminently dangerous."

It was Armand's duty to obey the orders given him by Chevrette. In view of his age and his desire to retain his employment, it may well be said that—

"He obeyed that instinctive impulse to follow the direction of his superior, which is the characteristic

of a faithful, resolute, and loyal servant, and his conduct is entitled to be viewed in the light of reasonable charity." *Sawyer* v. *Rumford Falls Paper Co.,* 90 Me. 354 (38 Atl. 318, 60 Am. St. Rep. 260).

He was not fully aware of the danger to which he became exposed by the weather conditions at the time they started to make the deliveries. Neither was it at that time apparent to Chevrette. Ordinarily, it would have taken but a short time to do so, as the distance traveled was about four miles, but, when the truck became stalled and the weather more inclement as they proceeded, the danger to a boy, dressed as Armand then was, should have become apparent to Chevrette, and, in view of the assurance he had given him that he "would be all right," it cannot be said as a matter of law that there was not negligence on his part, or that Armand assumed the risk incident to the service he was rendering, or was guilty of contributory negligence in its performance.

The following special questions were submitted to the jury, and answered as indicated:

"1. Was the risk to health arising from delivering groceries under the weather conditions existing on the evening of March 6, 1929, reasonably incident to that employment and such as under the circumstances would be seen and appreciated by an ordinarily prudent person of the age and experience of plaintiff's ward?

"Answer: Yes.

"2. Would a person of ordinary intelligence reasonably anticipate that the performance of the services rendered by Armand LaPointe on March 6, 1929, under the weather conditions then existing would probably result in bringing on an attack of osteomyelitis?

"Answer: No.

"3. Should a person of ordinary intelligence reasonably anticipate considering the age of plain-

tiff's ward that the performance of the services rendered by Armand LaPointe on March 6, 1929, under all the conditions then existing would result in the damages claimed to have been suffered by plaintiff's ward?

"Answer: No."

It is urged that the answers to these questions "were inconsistent with the general verdict." The trial court held that they were not controlling. After due consideration, in view of what has been heretofore said, we have reached the same conclusion. Armand testified that he feared the effect of the exposure, clothed as he was, but was induced to go by the assurance that they would be out but a few minutes, and that he "would be all right." It is apparent that Chevrette did not anticipate that the exposure to which Armand was likely to be subjected would result as it did. He no doubt expected that the deliveries would take but a short time, but, when it became apparent that, owing to the condition of the streets, considerable time would be needed therefor, the jury were warranted in finding that he was guilty of negligence in insisting on Armand's remaining with the truck. The declaration not only charged negligence in ordering him to assist in the delivery, but in keeping him out in the storm, knowing that he was inadequately dressed to be exposed to severe weather.

In *Baker* v. *Railroad Co.*, 169 Mich. 609, 618, it was said:

"Where an act is negligent, to render it the proximate cause, it is not necessary that the one committing it might have foreseen the particular consequence or injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been anticipated that some injury might occur."

Was the plaintiff an employee of the tea company? The defendant Chevrette, in his answer to the declaration, admitted "that plaintiff was in the employ of the tea company on March 5, 1929." The defendant tea company, in its answer afterwards filed, made a denial thereof. On the same day, an amended answer of Chevrette was filed, which also contained a denial of such employment. Both defendants were at all times represented by the same attorneys. The plaintiff testified that he was employed by Chevrette, and that the money paid to him was taken out of the cash register in the store. Chevrette testified that he had no knowledge that such an admission was made in the answer first filed; that the company did not pay for deliveries, and that he personally paid plaintiff for the services rendered by him. Chevrette was the manager in charge of the tea company's store. He makes no claim that he told plaintiff that he was paying for the deliveries himself. He testified that deliveries were being made at so late an hour because "the people were coming in and complaining about not delivering the orders," and that deliveries were made "in compliance with the custom of the store." The plaintiff, unless otherwise informed, had the right to assume that he was rendering services for the company, and not for Chevrette personally.

The trial court carefully instructed the jury as to the relation of principal and agent, and that, to entitle plaintiff to recover, it must appear that Chevrette's act in hiring him "was within the real or apparent scope of the presumed authority." In *Grand Rapids Electric Co.* v. *Walsh Manfg. Co.,* 142 Mich. 4, 9, it was said:

"It is equally well settled that, having ascertained the general character or scope of the agency, the

party is authorized to rely upon the agent's having such powers as naturally and properly belong to such character, and, in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations of the apparent powers of the agent.''

See, also, *Brandt* v. *C. F. Smith & Co.*, 242 Mich. 217, and *Central Railroad* v. *DeBray*, 71 Ga. 406 (48 L. R. A. [footnote] 765).

While ''the apparent authority for which the principal may be liable must, however, be traceable to him and cannot be established by the acts and conduct of the agent'' (*Maryland Casualty Co.* v. *Moon*, 231 Mich. 56, 62), the act of the defendant company in establishing and maintaining for a length of time a store for the sale of merchandise, some of which must be conveyed to the homes of customers by some sort of vehicle, might well be found by the jury to confer authority on the part of its manager to provide for its delivery. That it was the policy of the company to make no deliveries is in no way controlling unless by advertisement or otherwise the customers and the help employed by the manager were informed thereof.

Error is assigned upon the admission of the testimony of several doctors that in their opinion the alleged exposure ''did cause the result complained of'' under the holding of this court in *DeGroot* v. *Winter*, 261 Mich. 660. The objection now urged was not made at the trial, nor were the errors in this respect complained of on the motion for a new trial. They may not be considered on this appeal. *Rice* v. *Katz*, 255 Mich. 1; *Burke* v. *Henry*, 261 Mich. 74.

On a motion for a new trial, it was insisted that the verdict was against the great weight of the evi-

dence, and that the amount for which the judgment was rendered is still excessive. The trial court held that there was evidence to support the verdict, and, although disputed, its weight was for the jury. He heard and saw the witnesses. We are unwilling to disturb the conclusion reached by him in this respect.

He also had opportunity to observe the physical condition of the plaintiff at the time of the trial, and heard the witnesses testify as to his suffering and then condition. In *Kinsler* v. *Simpson,* 257 Mich. 7, it was said:

"If reasonably within the range of the testimony, the determination of the trial judge as to the amount of damages to be awarded will not be disturbed, on appeal."

When the plaintiff rested, and also at the conclusion of the proofs, the defendants moved for a directed verdict on the ground, among others, that—

"The suit purports to be brought by the guardian, and she is named as plaintiff throughout the pleadings. The suit is brought by her by designation as guardian, etc., being merely a designation of a person, and there is no proof in the case of any injury or damage in the case to the person named as plaintiff."

In disposing of this question on the motion for judgment notwithstanding the verdict, the trial court said:

"The first reason, which is to the effect that the suit purports to be brought by the guardian for injuries to herself, and that the description of her as guardian is merely description of the person, is not borne out nor supported by the language of the declaration taken as a whole and taking its fair import. While the declaration can hardly be said

to be a model of legal craftsmanship, its meaning is plain, the evidence was all directed to injuries to the boy, and if its defects are more serious it can be now corrected by amendment.''

The length of this opinion would seem to preclude the insertion in it of the declaration in full. Under the liberal rules applied to pleadings in this State, we think the motions were properly denied for the reason stated by the trial court.

The other errors assigned have been considered, but do not merit discussion.

The judgment is affirmed.

McDonald, C. J., and Potter, North, Fead, Wiest, and Butzel, JJ., concurred. Clark, J., took no part in this decision.