THORNTON *v* CITY OF FLINT

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.

    Contributory negligence is usually a question of fact; contributory negligence occurs as a question of law only where there can be no reasonable difference of opinion on the proximate cause of the plaintiff's injury.

2. NEGLIGENCE—INTERVENING ACT—INTENTIONAL ACT—QUESTION OF FACT.

    Whether plaintiff's diving from his jail bunk was an intervening act, cutting off defendant city's liability for failing to care properly for the plaintiff who was in defendant's jail, was a question of fact where the plaintiff's relatives had allegedly told defendant's police officers that the plaintiff was an alcoholic, suffered delirium tremens, and should be hospitalized.

3. NEGLIGENCE—INTERVENING ACTS—INSTRUCTIONS TO JURY—EVIDENCE.

    Defendant's requested instruction that intervening independent acts of third persons, which defendant could not reasonably foresee and which proximately caused plaintiff's injury, would cut off defendant's negligence, was properly refused where no evidence was adduced to support the giving of that instruction.

4. NEGLIGENCE—AVOIDABLE CONSEQUENCES—INSTRUCTIONS TO JURY—EVIDENCE.

    An instruction on avoidable consequences was properly refused where defendant city did not indicate how plaintiff, an

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur. 2d, Negligence § 295 *et seq.*
[2] 57 Am Jur 2d, Negligence §§ 198, 205.
[3, 6] 57 Am Jur 2d, Negligence §§ 158, 163, 202.
[4] 57 Am Jur 2d, Negligence §§ 194, 211, 212.
[5] 53 Am Jur, Trial § 101.
    5 Am Jur 2d, Appeal and Error §§ 553, 604.
[7] 3 Am Jur 2d, Agency § 273 *et seq.*
[8] 57 Am Jur 2d, Negligence § 378 *et seq.*
[9] 57 Am Jur 2d, Negligence §§ 76, 354, 356.

alcoholic suffering delirium tremens and suing for damages he sustained by jumping from his jail bunk, could have minimized his damages after he jumped.

5. EVIDENCE—EXCLUSION—PRESERVING QUESTION.

Excluding defendant city's testimonial evidence, in a negligence action, on whether any prisoner other than plaintiff had been hurt in the past while suffering delirium tremens in defendant's jail did not constitute reversible error and did not necessitate a new trial where defendant made no offer of proof, no request to make a separate record, did not oppose the trial court's ruling, and did not contend for a proper ruling.

6. NEGLIGENCE—FORESEEABILITY—INSTRUCTIONS TO JURY—STANDARD JURY INSTRUCTIONS.

Refusal to instruct the jury on foreseeability as an element in determining whether defendant's negligent act was the proximate cause of plaintiff's injury was not reversible error where the trial court gave the Michigan standard jury instruction defining proximate cause, which was applicable to the facts and which accurately stated the applicable law (Mich SJI 15.01).

7. NEGLIGENCE—MUNICIPAL CORPORATIONS—NOTICE—NOTICE TO EMPLOYEES.

Notice given by plaintiff's relatives to a policeman serving as a court officer in defendant city's municipal court that plaintiff was an alcoholic who suffered from delirium tremens and that he should be hospitalized rather than jailed, constituted notice to defendant city regarding plaintiff's condition where uncontradicted testimony by defendant's police officers showed that a policeman serving as a court officer had the duty of passing along to the jail turnkey information of an arrested person's medical condition and that such information was regarded as significant information which would be passed on by a well-trained officer to the turnkey.

8. NEGLIGENCE — SUBSEQUENT NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

The contributory negligence of the plaintiff, who was suing a city for injuries he suffered when he jumped from his bunk in defendant's jail, in failing to inform police officers that he was an alcoholic suffering from delirium tremens, assuming that plaintiff's failure was contributory negligence, ended when plaintiff became unaware of reality, a point reached before he jumped; the negligence of the defendant, whose offi-

cers had been told by the plaintiff's relatives, before the plaintiff jumped, that the plaintiff was an alcoholic suffering from delirium tremens was subsequent to the plaintiff's contributory negligence.

9. NEGLIGENCE—STANDARD OF CARE—ALCOHOLICS—INSTRUCTIONS TO JURY.

An instruction to the jury that plaintiff, an alcoholic, was required to exercise the ordinary care expected of other alcoholics, not the ordinary care expected of nonalcoholics, did not prejudice defendant where the plaintiff was suing a city for negligently failing to take care of him while he was in jail, the trial judge's charge on the standard of care was, as a whole, accurate, there was evidence that defendant knew that plaintiff was an alcoholic who suffered from delirium tremens, the plaintiff had not voluntarily placed himself in jail, but was arrested, and plaintiff, when he was injured when he jumped from his bunk, was not intoxicated, but suffering delirium tremens.

Appeal from Genesee, Elza H. Papp, J. Submitted Division 2 January 4, 1972 at Lansing. (Docket No. 10775.) Decided March 22, 1972.

Complaint by Robert Lee Thornton against the City of Flint for negligence. Judgment for plaintiff. Defendant appeals. Affirmed.

*Leitson, Dean, Dean, Segar & Hart, P. C.,* for plaintiff.

*Robert E. Weiss,* City Attorney, and *Edward H. Devoe,* Assistant City Attorney, for defendant.

Before: LESINSKI, C. J., and McGREGOR and QUINN, JJ.

LESINSKI, C. J. Plaintiff Robert Lee Thornton brought this action for damages against defendant Flint, a municipal corporation, for its negligence in failing to take proper precautions to insure his

safety when he was incarcerated in defendant's jail during July, 1968. Both before and during plaintiff's jailing, defendant had allegedly been given notice that plaintiff was a chronic alcoholic with a past history of suffering from delirium tremens. Plaintiff was awarded a judgment of $20,000 by a jury, and defendant appeals as of right from that judgment.

Plaintiff was arrested for breach of peace by police officers employed by defendant Flint on July 9, 1968, after he had exploded a homemade cannon at his mother's home. Plaintiff had been drinking at the time of his arrest.

Plaintiff's mother testified at trial that she informed the arresting officers that plaintiff should be in a hospital, not in a jail, and that he was an alcoholic. The arresting officers for defendant Flint, Ronald J. Samek and Michael D. Thomas, did not recall being told plaintiff was an alcoholic, athough Officer Samek did remember plaintiff's daughter not wanting her father to go to jail. According to both officers, plaintiff did not appear to be intoxicated at the time of his arrest. Plaintiff's daughter, aged 13 when the incident occurred, stated that her grandmother had told the arresting officers that plaintiff was sick, had been drinking, and might go into delirium tremens.

After plaintiff had been arrested and conveyed to jail, his mother called her niece, Carol Branam, and requested her to go to the jail in order to inform "them" of his condition. Carol Branam, accompanied by her daughter Clara Branam, went to both the courthouse and jail on July 10, 1968. They ascertained that plaintiff had already pled not guilty to the charge and a bond had been set. Carol Branam visited plaintiff at the jail, told him that she had been unsuccessful in attempting to raise the

funds for bond, and advised him to change his plea to guilty.

She then went to the judicial chambers of Judge Showley, a Flint municipal judge, in an attempt to discover how much plaintiff would be fined if he pled guilty. She testified that she there talked to a Flint police officer, Gaylord Stevens, who was attired in a Flint police officer's uniform and was then serving as a court officer. She said that she told Officer Stevens that plaintiff could not live through the delirium tremens again. According to her testimony, Officer Stevens told her that if prisoners began suffering from delirium tremens, they were taken to Hurley Hospital. She stated that Judge Showley was also present during part of this conversation. Officer Stevens remembered that there had been a discussion between himself, Judge Showley, and a young woman concerning the fact that her husband or her brother "drank quite a bit", it being determined that "the best thing to do was to leave him in jail". Judge Showley, whose testimony was presented by deposition, said that he had "no independent recollection" of the discussion, but that "it could well have taken place".

Later in the day of July 10, Carol Branam called a friend on the Flint police force, Melvin Scott, who was serving as turnkey at the Flint jail at the time. She inquired of Officer Scott as to the care that was taken of alcoholics at the jail, and informed him that plaintiff was in the jail, was an alcoholic, and "was going into the tremens". Scott testified that he could not recall either Carol Branam's visit to the jail earlier on that day or the phone call.

Plaintiff, in fact, pled guilty to the charge of disturbing the peace and was fined $35 on that same day, July 10, and assessed $3.50 costs, or, in lieu of payment, was sentenced to 20 days in jail. Plain-

tiff was assigned to dormitory 4, the trustee's cell, which cannot be directly observed by police personnel in the booking office.

Shortly after midnight on July 13, plaintiff jumped from the top bunk of domitory 4 to the floor, fracturing his neck. According to his testimony, he had imagined hearing voices and whispering between the walls, and he believed the other prisoners were going to attack him. He was taken immediately to Hurley Hospital after being injured. In addition to receiving treatment for his fractured neck, plaintiff was also given medication for delirium tremens. He continued to suffer the symptoms of delirium tremens for ten days after his admittance to the hospital.

Of the other police officers who testified at trial, all of whom had worked during the period of plaintiff's incarceration, Claude G. Shinn, William J. Hamilton, Jr., and James Foster testified they could not remember plaintiff. Two of the policemen on duty at the time plaintiff was injured, John Port and Edward Price, stated that they had not been given any information relative to plaintiff's alcoholism and prior history of experiencing delirium tremens.

On appeal, defendant initially urges that the trial court committed error in not ruling affirmatively on its motion that plaintiff was contributorily negligent as a matter of law at the close of plaintiff's proofs. As this Court stated in *Dobbek* v *Herman Gundlach Inc,* 13 Mich App 549, 554 (1968) :

"Contributory negligence is usually a matter for jury determination and should be determined by the trial judge only when there could be no reasonable difference of opinion on the proximate cause of an event."

On the facts of this case, the question of whether plaintiff was contributorily negligent was properly left to the jury by the trial court.

Defendant also alleges error resulting from the trial court's denial of its motion, made at the close of plaintiff's proofs, that any negligence on the part of defendant was cut off by the intervening cause of plaintiff's intentional act of diving from his bunk. This argument is properly viewed as one relating to the proximate cause of the injury suffered by plaintiff. The issue of causation, in a case where reasonable minds could differ as to whether defendant's negligence caused plaintiff's injury, is properly a matter left to the jury. *Comstock* v *General Motors Corp,* 358 Mich 163, 180 (1959). See, also, *Davis* v *Thornton,* 384 Mich 138 (1970).

In response to defendant's argument on this point, plaintiff cites *Paulen* v *Shinnick,* 291 Mich 288 (1939). In *Paulen,* a mental patient intentionally leaped from the third floor window of a private mental hospital, after she had distracted the attendant nurse who had failed, upon opening the window, to lock the protective screen. The patient and her husband brought an action against defendant operator of the hospital for the injuries which were incurred in the fall. In affirming a jury verdict for plaintiffs, the Michigan Supreme Court stated:

"A patient in a private hospital is clearly entitled to reasonable care and attention from the authorities and employees, and the nature of such care will depend upon the attendant circumstances of each individual case, including the known physical and mental condition of the patient." *Paulen, supra,* 290–291.

Even though the patient's act could be characterized as intentional, plaintiffs were still allowed to

recover, a jury question having been presented by the facts.

Likewise in the present case, plaintiff's act of diving from the bunk in his jail cell, although "intentional", may not have been one of free volition, given the evidence as to plaintiff's medical history, and the issue was properly left to the jury.

Defendant's third claimed error on appeal concerns the trial court's failure to instruct the jury, as requested by defendant, that intervening independent acts of third persons, not reasonably foreseeable by defendant, which proximately caused plaintiff's injury, would cut off defendant's negligence. Defendant, however, points to no independent acts on the part of third parties which proximately caused plaintiff's injury, and our search of the record reveals none. Thus, the trial court correctly refused to give defendant's proposed instruction on this point.

Defendant further argues that the trial court erred in failing to give defendant's requested instruction on avoidable consequences. The doctrine of "avoidable consequences" was discussed by the Michigan Supreme Court in *Socony Vacuum Oil Co v Marvin,* 313 Mich 528, 544 (1946):

"The issue presented is not one of contributory negligence but rather, as claimed by counsel for plaintiff, of minimizing damages following the occurrence out of which the cause of action arises. This is sometimes referred to as the duty to prevent 'avoidable consequences.'

"In 25 CJS p 499, it is said:

" 'The rule of avoidable consequences is to be distinguished from contributory negligence in that contributory negligence is a bar to the action while the rule of avoidable consequences merely goes to the reduction of damages caused by defendant.' "

In the *Socony Vacuum Oil Co* case, there was an issue as to whether plaintiff's damages were aggravated by the failure of plaintiff's employee to turn off the ignition of the gasoline truck he was driving, following a collision with defendant's automobile. After plaintiff's driver left the truck, it burst into flames, the equipment and load being destroyed.

Unlike the *Socony* case, *supra,* the present facts do not merit an instruction on avoidable consequences. Defendant has not indicated how plaintiff could have minimized his damages, after suffering injury by jumping from his bunk. Plaintiff did not claim damages for any time prior to that when his injury was incurred, either.

Defendant's next assignment of error is centered on the trial court's failure to instruct the jury that foreseeability is an essential element in determining whether a negligent act can be the proximate cause of an injury, and its exclusion of testimonial evidence on this point.

Concerning the excluded evidence, defendant attempted to introduce testimony on whether any prisoner had been hurt in the past while suffering from delirium tremens in the Flint jail. Pursuant to plaintiff's objection, the trial court excluded the testimony.

On the authority of *Henson* v *Veterans Cab Co of Flint,* 384 Mich 486 (1971), we hold that the exclusion of the evidence on this point is not reason for a reversal of the judgment below and a granting of a new trial. In *Henson, supra,* p 494, the Court interpreted three court rules, GCR 1963, 604, 507.5 and 529.1. Read together, the Court said, these rules required:

"that a party seeking reversal of the trial court's order denying a new trial has the burden in the appellate court of showing (1) that the ruling was er-

roneous, (2) that he opposed the ruling and contended for a proper ruling, and (3) that the erroneous ruling was prejudicial, so that the denial of his request for a new trial would be inconsistent with substantial justice."

We see no reason to limit this holding to cases where the party seeks reversal of a trial court's order denying the party's request for a new trial. The *Henson* standard is equally applicable to a case such as this one where the requested relief is the granting of a new trial.

In the course of explaining the *Henson* guideline, the Court further stated at p 494:

"Whether on direct or cross-examination, an offer of proof or a request to make a separate record will serve to show that counsel opposed the court's ruling and contended for a proper ruling."

There was no offer of proof, nor request to make a separate record in the instant case. Neither is there any other indication in the record that defendant opposed the court's ruling and contended for a proper ruling. Defendant's argument on this point does not require reversal of the judgment below.

Although the trial court did refuse to instruct the jurors on foreseeability as an element of proximate cause, it did charge them with Michigan Standard Jury Instruction (SJI) 15.01, which defines proximate cause. Pursuant to the terms of GCR 1963, 516.6(2), portions of the SJI "shall be given in each civil case in which jury instructions are given if (a) they are applicable and (b) they accurately state the applicable law". SJI 15.01 was applicable in this case and accurately stated the applicable law. Accordingly, no error resulted from the trial court's denial of defendant's request on this matter.

Additionally, defendant Flint complains of the trial court's instruction that notice to Gaylord Ste-

vens, the policeman who was serving as a court officer at the time of the incident, was notice to defendant of plaintiff's condition. Testimony at trial revealed that defendant's police department assigns officers to the courts for periods of time without instructions, and these officers are under the direction of the court to which they are assigned. However, Lieutenant Hardy Moore, who was in charge of the operation of the jail section of the Flint Police Department, was responsible for assigning policemen to the court. Lieutenant Moore also answered affirmatively when asked on cross-examination whether custom and practice would require that a court officer relay to the turnkey information gained in the courtroom concerning the health needs of the prisoner.

The record reveals that Officer Stevens had been employed by the Flint Police Department for over 16 years when the incident occurred. He testified that he had "done most every job in the police department", and that he had served as a turnkey for 8-1/2 years.

Both parties cite *Dundas* v *Lansing,* 75 Mich 499 (1889), as authority for their respective positions on notice of Officer Stevens. In *Dundas,* p 504, the Michigan Supreme Court stated:

"The individual knowledge of officers or agents of a municipal corporation, who in such capacity have powers or duties conferred upon them with reference to a given matter, is the knowledge of the corporation, and notice to such officers or agents is notice to the corporation, and the corporation is bound or affected by such knowledge or notice."

In *Flint* v *Chicago Bonding & Surety Co,* 202 Mich 438 (1918), the Court refused to apply the language where notice had been made to city officers who had

no powers or duties in relation to the matter about which notice had been given.

In this case, however, there was uncontradicted testimony from Officer Stevens and Lieutenant Hardy Moore, Stevens' superior in the police department, that it was the duty of a policeman serving as a court officer to pass along to the turnkey information of a defendant's medical condition. James Rutherford, Chief of Police of defendant Flint, also related at trial that receipt of information that a person is an alcoholic and has suffered from delirium tremens in the past would be regarded as significant information and such information would be passed on to the turnkey by a well-trained officer. On the basis of this testimony, it was not error for the trial court to charge the jury that notice to Gaylord Stevens was notice to defendant Flint as a matter of law.

Defendant further contends that the trial court committed error by instructing the jury on the doctrine of discovered negligence, arguing that it was not raised by the facts presented in this case. The court employed SJI 14.01 in so instructing the jury.

Discussing the doctrine of discovered negligence in *Davidson* v *Detroit,* 307 Mich 420, 430 (1943), the Michigan Supreme Court stated that for the rule to be applicable:

"[P]laintiff's negligence must have put her in a position of danger, must have ceased to operate as the proximate cause of the accident, the defendant must have discovered plaintiff's peril or should by the exercise of ordinary care and diligence have discovered plaintiff's peril, the defendant must have had sufficient time and ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand, and failed or omitted to use such care and diligence to avert the threatened injury.

The proof should be clear and convincing that the defendant had discovered the plaintiff's peril, or should have done so by the exercise of ordinary care and diligence, and by the use of the means at hand have had time to avert the threatened injury. Under the above circumstances, the subsequent negligence of the defendant has been held to be the proximate cause of the injury, that the antecedent (although continuing) negligence of the plaintiff is no longer the proximate cause, and that therefore the contributory negligence of the plaintiff would not bar recovery."

There was evidence in the case at hand that defendant should have been aware of plaintiff's peril, as plaintiff's witnesses testified that notice had been given by plaintiff's mother and Carol Branam to police officers of defendant Flint. Up until such time as defendant, in fact, received notice of plaintiff's condition, it had no duty to take precautions for his safety. Only when defendant's duty arose could its negligence have begun. Defendant, of course, argued at trial and before this Court that plaintiff was contributorily negligent in failing personally to inform the police of his infirmity.

It is true that defendant's negligence and plaintiff's contributory negligence, if indeed the jury found plaintiff guilty of contributory negligence, was concurent for a time under defendant's theory of the case. Confronted with these facts, however, we feel that plaintiff's contributory negligence in failing to inform defendant of his condition ended when his consciousness was so affected by delirium tremens that he became unaware of reality, a point that was reached before he began hearing voices and jumped from the upper bunk to the floor. Thus, there is a point of time, under these facts, when "defendant's negligence became subsequent to plaintiff's". *Szost*

v *Dykman,* 252 Mich 151, 153 (1930).  At that time, the jury could have found plaintiff's negligence ceased to operate as the proximate cause of his injury under *Davidson, supra,* if, as we have emphasized, the jury did determine plaintiff was negligent.  Thus, we find there was also no error on this issue.

Defendant's final allegation of error concerns the trial court's instructions on the standard of care required of plaintiff.  The trial court instructed the jury first that the care expected of plaintiff was that which "a reasonably careful person would do or not do for his own safety under the circumstances of this case".  She then amplified on those remarks, explaining that an adult who was an alcoholic or suffered from a mental problem was required to "observe the same care which a normal and reasonable, careful person would exercise under the circumstances which you find from the evidence existed in this case".

However, after the judge had concluded her charge to the jury, plaintiff requested an added instruction on standard of care.  In response to this request, the trial court further instructed the jury:

*"The Court:* Ladies and gentlemen of the jury, there are two things that counsel believes that the court should go over.  * * *  It's about where—the use of the term 'ordinary care.'  When I use the words 'ordinary care,' I mean the care a reasonably careful person would use under the circumstances that you find existed in this case.  The law does not say what a reasonably careful person would do or would not do under such circumstances; that is for you to decide.  Now the—when I use the term 'his negligence' and 'ordinary care' insofar as Mr. Thornton is concerned, you have to consider him—you have to consider the ordinary care that he is supposed to take care of himself as another person in

the same circumstances, such as he is a chronic alcoholic, if you find that he was. That's what we mean about ordinary care; because his type of care would be totally different than one of yours if you have no problem with alcoholism, you see. So you have to consider it from that standpoint."

The court refused to give defendant's charge on this subject, and also refused to give SJI 13.02, an instruction on intoxication as affecting negligence. Contrary to defendant's contention, the court did give SJI 13.03, concerning mental deficiency in the adult, however. We do not feel the trial court's charge, under the *facts of this case,* was erroneous. Initially, we note that the trial judge's charge as a whole on the issue of the standard of ordinary care to which the plaintiff would be held was an accurate statement of the law as set forth in SJI 10.01, 10.02, 10.03, and 13.03. Also, trial courts have the power, under GCR 1963, 516.6(4), "to give additional instructions on applicable law not covered by SJI".

Defendant argues that the trial court's additional charge is a misstatement of the law in this State, on the authority of *Strand* v *Chicago & W M R Co,* 67 Mich 380, 385 (1887), wherein the Court stated:

"A man cannot voluntarily place himself in a condition whereby he loses such control of his brain or muscles as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and by such loss of control contribute to an injury to himself, and *then require of one ignorant of his condition* recompense therefor." (Emphasis supplied.)

In the instant case, there was testimony that defendant Flint was not ignorant of plaintiff's condition. In *Strand,* p 382, the Court pointed out that "there was no evidence showing that he was so intoxicated, or so affected by liquor, as to be noticeable by any of the defendant's employes upon the train".

We deem it of great significance, moreover, that the plaintiff did not place himself in his predicament, but rather, was arrested and taken to the jail. The duty which defendant owed to plaintiff arose out of this special relationship in which defendant was one "required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection". 2 Restatement Torts, 2d, § 314A(4), p 118. This factual setting, where plaintiff was imprisoned, is analogous to that in *Paulen, supra,* where plaintiff was a mental patient. In both situations, defendants had taken custody of another. Neither plaintiff was free to leave the place of confinement. There was testimony in this case, as there was in *Paulen,* that defendant had notice of plaintiff's malady. Both plaintiffs injured themselves because, as plaintiff alleged in this case and as was shown in *Paulen,* defendants failed to take reasonable steps to care for their well-being, given their conditions. Yet the patient in *Paulen* was allowed to recover for her injuries, despite her seeming failure "to observe the same care which a normal and reasonably careful person would exercise under the circumstances which * * * existed in this case". SJI 13.03.

Finally, we point out that plaintiff Thornton was not intoxicated, at least during the latter stages of his four-day stay at the jail, but, on the other hand, was suffering the effects of withdrawal from alcohol.

Thus, on the facts of this case and the totality of the trial judge's charge, defendant was not prejudiced by the trial court's instruction on standard of care.

Affirmed.

All concurred.