*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0304P (6th Cir.)
File Name: 03a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JERRILYN HUNLEY; JEROME
HUNLEY,
     *Plaintiffs-Appellants,*

     *v.*

DUPONT AUTOMOTIVE,
Division of E.I. DuPont de
Nemours and Co., Inc.,
     *Defendant-Appellee.*

No. 01-2733

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-72043—Nancy G. Edmunds, District Judge.

Argued: June 17, 2003

Decided and Filed: August 25, 2003

Before: BOGGS and GILMAN, Circuit Judges;
MARBLEY, District Judge.[*]

_____

   [*] The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## COUNSEL

**ARGUED:** Donnelly W. Hadden, Ann Arbor, Michigan, for Appellants. Raymond Michael Ripple, E.I. DU PONT DE NEMOURS AND COMPANY, Wilmington, Delaware, for Appellee. **ON BRIEF:** Donnelly W. Hadden, Ann Arbor, Michigan, Patrick D. Ball, Mount Clemens, Michigan, for Appellants. Raymond Michael Ripple, Donna L. Goodman, E.I. DU PONT DE NEMOURS AND COMPANY, Wilmington, Delaware, Robert S. Krause, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellee.

## OPINION

   ALGENON L. MARBLEY, District Judge. This is a negligence action that was removed to federal court based on diversity jurisdiction. Plaintiffs-Appellants, Jerrilyn Hunley, individually and as guardian of the estate of Jerome Hunley, and Jerome Hunley, brought suit against Defendant-Appellee, DuPont Automotive, Division of E.I. DuPont de Nemours and Co., Inc., for harm incurred by Jerome Hunley after his exposure to a large paint spill in the DuPont Automotive plant in which he was working as a security guard. Plaintiffs-Appellants now appeal the district court's ruling granting summary judgment to Defendant-Appellee. The district court exercised jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This Court's appellate jurisdiction is proper under 28 U.S.C. § 1291.

   For the reasons discussed below, this Court finds that the district court properly granted summary judgment to Defendant-Appellee, and, therefore, **AFFIRMS** the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual History

Defendant-Appellee, DuPont Automotive, Division of E.I. DuPont de Nemours and Co., Inc. ("DuPont"), operates a paint factory in Mount Clemens, Michigan. At approximately 9:34 p.m., on January 27, 1997, DuPont suffered one of the largest paint spills in the history of the plant. At that time, a DuPont employee was in the process of filling a shipping container with paint to ship to an automobile manufacturer. As she was moving the container toward a holding tank, she struck the bottom of the tank with the top of the container, thereby dislodging the filling valve of the tank. Within the next few minutes, the tank emptied its 2400 gallons of paint onto the worker and the surrounding work area.

DuPont mandates that any chemical spill of more than one-quarter cup necessitates an emergency response. Therefore, at 9:35 p.m. on the evening of the spill, DuPont employees initiated emergency procedures. In particular, a DuPont fire brigade member working in the production area sounded the alarm, calling into action a plant-wide emergency response. Upon hearing the alarm, DuPont's internal fire brigade members donned their protective gear and entered the spill area. According to DuPont, within minutes, all non-fire brigade employees had evacuated the production area and reported to their assigned evacuation sites, closing the fire doors between the production area and the shipping warehouse as they left. One door, however, was left open, such that non-emergency response employees were able to gain entrance to the area of the spill.[1]

---

[1] DuPont asserts that all doors to the area of the spill were shut. As this matter is before the Court on appeal from the district court's order granting summary judgment to the Defendant-Appellee, however, the Court views the facts in the light most favorable to Plaintiffs-Appellants. Therefore, the Court presumes for the present purposes that the Plaintiffs-Appellants are correct that Hunley entered the area of the spill through a

DuPont contracts with Pinkerton, a private security company, to provide security at the plant. At the time of the spill, Plaintiff-Appellant Jerome Hunley ("Hunley") was employed as a Pinkerton security guard at the DuPont plant in Mount Clemens. Pinkerton security guards are obligated to follow Pinkerton's Site Post Orders. Those orders specify that, in the event of a spill, Pinkerton security guards are to provide a head count report to the fire brigade captain.[2] The Pinkerton Site Post Orders also expressly state: "Security does not respond to the scene of a spill."

According to Plaintiffs-Appellants, upon Hunley's arrival at work on the evening of the spill, he was told by his supervisor, Bill Maynard, to deliver the head-count report to the fire brigade captain. Hunley printed out the report, and then delivered it to the fire brigade captain, whom he found in the area of the spill. Hunley claims that he gained access to the area of the spill by entering through an open door. When he entered the area of the spill to deliver the report, he was not wearing protective clothing, nor was he breathing through a respirator; none of these protective items had been issued to him by DuPont. The fire brigade members in the vicinity of the spill, however, were all wearing protective clothing, including masks.[3]

---

door that had been left open.

[2] Although there was some dispute between the parties regarding the nature of the head count report provided by Pinkerton Security, it appears that the purpose of the report is to ensure that all non-emergency response employees signed in to the building at the time of the emergency are accounted for.

[3] The Court recognizes that DuPont asserts that Hunley had been issued protective clothing, but that he was simply not wearing it at that time. Hunley, however, asserts that the special clothing that he was provided by DuPont would not have protected him from the spill, and was not of the same type as that worn by the fire brigade members.

Hunley states that, shortly after delivering the report to the fire captain, he began to have "rushing thoughts," which he describes as "too many thoughts running through [his] head at once," and that he also began feeling dizzy. After working the night of the spill, Hunley went home and tried to sleep. While trying to sleep, however, he began hallucinating. In particular, he claims that he heard "whale sounds" and saw "upside down people." Hunley then drove to his grandmother's home, thinking that would help calm him.[4]

On the drive back home from his grandmother's house, Hunley's hallucinations continued. In response to one of the hallucinations, Hunley began driving his truck at speeds estimated to be between sixty and ninety miles per hour against rush hour traffic in Troy, Michigan. Ultimately, his car became airborne, and then landed on top of the car of a nineteen-year-old woman, who was pronounced dead at the scene of the accident. Immediately following the accident, Hunley was transported to a nearby hospital, where he was initially diagnosed with brief reactive psychosis, a temporary diagnosis used to explain his acute psychotic symptoms.

Prior to the car accident, Hunley had no recorded medical history of mental illness, nor did he have a criminal record. He was twenty-four years old at the time. After a series of mental evaluations following the accident, Hunley was ultimately diagnosed with schizophrenia, an organic mental disease that frequently manifests itself when sufferers are in their late teens or early twenties. He has also been diagnosed as suffering from an "acute psychotic break" accompanied by auditory and visual hallucinations at the time of the accident. Hunley's expert, Dr. Gerald Shiener, M.D., opines that Hunley's psychotic break was brought on by the stress of knowing that he had been exposed to toxins in the area of the

---

[4]Apparently, one full day passed between the night of the spill and the day that Hunley drove to his grandmother's home. Hunley has no recollection of what occurred on that intervening day.

spill by being in the area without protective gear while all others in the vicinity of the spill were protected by special clothing and masks.

Following one year of hospitalization, Hunley was tried on a charge of manslaughter for the death of the nineteen-year-old woman in the car accident. At the conclusion of the trial, he was found guilty but mentally ill. He is currently incarcerated, serving a term of four to fifteen years.

### B. Procedural History

Plaintiffs-Appellants originally filed this case in the Circuit Court for the County of Macomb on January 28, 2000. Defendant-Appellee removed the case to the United States District Court for the Eastern District of Michigan on May 8, 2000, on the basis of diversity of citizenship. On November 28, 2001, after discovery had been completed, the district court issued an opinion and order granting summary judgment to Defendant-Appellee. Plaintiffs-Appellants filed their notice of appeal from that order on December 18, 2001.

### II. STANDARD OF REVIEW

The district court's grant of summary judgment is subject to *de novo* review by this Court. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465 (6th Cir. 2002) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 305 (6th Cir. 2001), and *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir. 1998)). Thus, on appeal, this Court reviews a motion for summary judgment according to the same standard that the district court applies.

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be

accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). In response, the non-moving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339-40 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party, however, "may not rest upon its mere allegations . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The existence of a scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III.  DISCUSSION

### A.  Negligence

The district court granted summary judgment to DuPont on the ground that Hunley failed to set forth a *prima facie* case of negligence. To state a *prima facie* case of negligence in Michigan, the plaintiff must establish the following four elements: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the defendant's breach caused the plaintiff's harm, which

includes (a) cause in fact and (b) legal, or proximate, cause; and (4) damages to the plaintiff. *Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 & n.6 (Mich. 2000). The district court premised its ruling on its finding that, although DuPont owed a duty to Hunley, DuPont did not breach that duty through its conduct. Based on the analysis set forth below, we conclude that, although Plaintiffs-Appellants raised a genuine issue of fact with respect to both duty and breach, summary judgment was nonetheless proper because they failed, as a matter of law, to establish a genuine issue of material fact as to the existence of proximate cause.

### 1.  Existence of a Duty

DuPont argues that Plaintiffs-Appellants have failed to establish the duty element of the *prima facie* case because it had neither a duty to provide Hunley with personal protective equipment, nor a duty to warn him that a psychotic break was a danger associated with visual exposure to a paint spill. DuPont errs, however, by viewing the issue of duty so narrowly. Although it may not have owed these particular duties to Hunley, it did have a general duty to exercise due care to protect its security guards, including Hunley, from certain dangers associated with paint spills. This duty arises from the relationship between DuPont and Hunley of premises owner and invitee.

Generally, "[a]n invitee, and in this case a business invitee, is one who enters a premises to conduct business that concerns the premises owner at the owner's express or implied invitation." *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 679 n.4 (Mich. 1992). The Supreme Court of Michigan has determined that an independent contractor is a business invitee. *Beals v. Walker*, 331 N.W.2d 700, 704 (Mich. 1982) (recognizing that an employee of an independent contractor who had been hired by the premises owner to do repair work was an invitee of the premises owner); *see Case v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 597, 602 (S.D. Miss. 1998) (citing *Beals* for the proposition

that, in Michigan, an employee of an independent contractor is a business invitee). Here, Pinkerton had a contract to provide security services to DuPont, and Hunley was an employee of that independent contractor. Thus, under *Beals*, Hunley was a business invitee on DuPont's premises.

A premises owner has a duty to exercise reasonable care to protect invitees from unreasonable risks of harm caused by a dangerous condition on the premises. *Williams v. Cunningham Drug Stores, Inc.*, 418 N.W.2d 381, 383 (Mich. 1988) (citing RESTATEMENT (SECOND) OF TORTS § 343, at 215-16). The owner's duty is not absolute, however. "It does not extend to conditions from which an unreasonable risk cannot be anticipated . . . ." *Id.*; *Stabnick v. Williams Patrol Serv.*, 390 N.W.2d 657, 658 (Mich. Ct. App. 1986) (holding that premises owners have no duty to warn invitees of unforeseeable dangers). A premises owner has a duty to warn invitees only of known dangers, or dangers that should have been known through the exercise of reasonable care, which the premises owner understands or should have understood would pose an unreasonable risk. *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995).

Applying the *Cunningham Drug Stores* standard, we believe that DuPont had a duty to exercise due care to protect its security guards, including Hunley, from the known dangers associated with paint spills that pose an unreasonable risk of harm. Although DuPont did not have a duty to protect its security guards from unreasonable risks that could not be anticipated, it is clear that the company did anticipate at least some unreasonable risks from paint spills. The fact that DuPont must have been aware of at least some risks associated with paint spills is evidenced by the fact that it provided its own emergency personnel with protective equipment, including special clothing and masks, with which they equipped themselves before entering the area of the spill. Were it not for the existence of some dangers that were known and anticipated by DuPont to pose an unreasonable risk of harm, the company likely would not have equipped its

response personnel with such protective gear. Therefore, as the premises owner, DuPont was under an obligation to exercise due care to protect its security guards from these known risks.

Accordingly, we conclude that Plaintiffs-Appellants satisfied the duty element of their *prima facie* case.

### 2. Breach

Plaintiffs-Appellants assert that DuPont breached its duty to Hunley by failing to provide him with protective gear, by failing to warn him about the nature of the hazards associated with paint spills, and by failing to warn him about the risks inherent in delivering the head count to the fire brigade captain. In addition, they argue that DuPont breached its duty when it allowed Hunley to enter the area of the spill through an open door.

First, we agree with the district court that DuPont did not breach its duty to Hunley by failing to provide him with protective gear. As indicated above, the duty imposed upon DuPont is a duty to protect its security guards from known dangers that DuPont understands pose an unreasonable risk of harm. Although the paint spill presented a risk, DuPont had no reason to know that it would present a risk to Hunley. At the time of the spill, DuPont understood that Pinkerton security guards were not to respond to the scene of a chemical spill. The purpose of providing protective gear is to protect those employees who will be exposed to the spill itself. Because DuPont reasonably believed that, as a Pinkerton security guard, Hunley would not respond to the scene of the spill, DuPont could not have breached its duty to Hunley by failing to provide him with protective gear.

For the same reasons, we hold that DuPont did not breach its duty to Hunley by failing to warn him of the dangers associated with toxic spills and with delivering head counts to the fire brigade captain in the area of those spills.

Although those dangers exist, and were known by DuPont, DuPont had no reason to foresee that Hunley would be exposed to those dangers; DuPont's management reasonably believed that Hunley's Site Post Orders prohibited him from entering the area of the spill. Thus, DuPont had no reason to believe that these dangers posed an unreasonable risk of harm to Hunley. Therefore, DuPont did not breach its duty by failing to give Hunley these warnings.

A question of fact exists, however, with respect to whether DuPont may have breached its duty to protect Hunley from the dangers of paint spills by leaving open a door to the spill area. DuPont asserts that all doors to the area of the spill were closed upon evacuation of the employees who had been working in the area prior to the spill. Hunley, on the other hand, alleges that he entered the area to deliver the head count through an open door. Thus, an issue of fact exists with respect to whether a door was, in fact, left open.

Assuming the door was left open, a jury might find that this fact constitutes a breach of DuPont's duty. Although DuPont understood that Pinkerton security guards were not to enter the area of the spill, a jury might find that DuPont should have foreseen that a security guard would nonetheless enter the area if a door were left open. In particular, the risk of a security guard entering the area of the spill through an open door might have been foreseeable in light of the fact that the security guard was told to deliver a head count to the fire brigade captain, wherever he may be. Moreover, although DuPont's other failures do not in and of themselves constitute a breach of DuPont's duty, those failures certainly become factually significant if DuPont could have foreseen that, by leaving a door open, Hunley might enter the area of the spill despite his Site Post Orders to the contrary.

Therefore, we conclude that the Plaintiffs-Appellants satisfied the breach element of their *prima facie* case to the extent necessary to survive summary judgment.

### 3. Causation

We now turn to the question of whether Plaintiffs-Appellants have raised a genuine issue of material fact with respect to the issue of causation. To satisfy this element, Plaintiffs-Appellants must demonstrate both cause in fact and legal, or proximate, cause. Based on our conclusion that Plaintiffs-Appellants have failed to demonstrate proximate cause as a matter of law, we need not reach the issue of cause in fact.

Relying on *La Pointe v. Chevrette*, 250 N.W. 272 (Mich. 1933), Hunley asserts that, under Michigan law, proximate cause requires only that the harm suffered by the plaintiff be the natural and probable result of the defendant's negligence, not that the particular harm suffered be foreseeable. In *La Pointe*, a young boy suffered an unusual infection of the bone in his leg after his employer forced him to work outdoors in inclement weather without the proper protective clothing. In ruling that the employer could be liable for the boy's disease, even though it was not foreseeable that such a severe illness would result from working outside in inclement weather, the court stated:

> "Where an act is negligent, to render it the proximate cause, it is not necessary that the one committing it might have foreseen the particular consequence or injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been anticipated that some injury might occur."

*Id.* at 275 (quoting *Baker v. Mich. Cent. R.R. Co.*, 135 N.W. 937, 940 (Mich. 1912)).

Although this language in *La Pointe* suggests that the particular harm suffered by the plaintiff need not have been foreseen for there to be proximate cause, more recent Michigan case law sets forth a different standard of law. Recent cases indicate that Michigan courts have shifted their

analysis of this issue and, under the current view, the determination of proximate cause involves an examination of the foreseeability of the harm suffered by the plaintiff, and whether the defendant should be held responsible for such harm. *Haliw v. Sterling Heights*, 627 N.W.2d 581, 588 (Mich. 2001) (finding that "'legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences'") (quoting *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994)); *Moning v. Alfono*, 254 N.W.2d 759, 765 (Mich. 1977) (stating that proximate cause turns on whether the result of the defendant's conduct was foreseeable). Indeed, even some cases that predated *La Pointe* indicate that proximate cause requires that the particular harm suffered by the plaintiff be foreseeable. *Luck v. Gregory*, 241 N.W. 862, 864 (Mich. 1932) (stating that proximate causation requires not only that the plaintiff's harm be the natural and probable result of the defendant's conduct, but also that "it ought to have been foreseen, in the light of the attending circumstances"); *Clumfoot v. St. Clair Tunnel Co.*, 190 N.W. 759, 760 (Mich. 1922) (recognizing that proximate cause requires that the reasonably prudent person would have foreseen or anticipated the plaintiff's harm as a result of the defendant's negligence).

Accordingly, we will apply Michigan's more recent principle of proximate cause in examining whether Plaintiffs-Appellants have raised a genuine issue of material fact with respect to this element.[5] Applying this standard, it is clear that Plaintiffs-Appellants have failed to establish this element of their *prima facie* case because no reasonable mind could find that it was foreseeable that Hunley would suffer an acute psychotic break, and, ultimately, schizophrenia, as a result of

---

[5]Although proximate cause often must be resolved by the jury, the Court may decide this issue as a matter of law if reasonable minds could not disagree with respect to the resolution of this issue. *Nichols v. Dobler*, 655 N.W.2d 787, 788 (Mich. Ct. App. 2002).

DuPont's having left the door to the spill area open. Even if it was foreseeable that a security guard not clothed in protective gear would enter the area of the spill and see other individuals in the area wearing protective gear, it was not reasonably foreseeable that, as a result of doing so, he would suffer the harm incurred by Hunley. Hunley's own expert, Dr. Shiener, stated simply that he believed that some of the mental health literature indicated that there was a relationship between the onset of psychosis and exposure to stressful situations. This statement does not indicate that exposure to stressful situations is certain to cause psychosis, or that even mental health experts can foresee which stressful situations will cause psychosis. Accordingly, no reasonable mind could find that it was foreseeable that exposure to this stressful situation would have resulted in Hunley's illness.

Furthermore, we are of the opinion that Hunley failed to establish proximate cause even under the more lenient standard of foreseeability that he contends applies under these circumstances. It may have been foreseeable that some physical harm might result from exposure to the paint spill. Plaintiffs-Appellants, however, argue not that Hunley's psychotic break resulted from exposure to the spill itself, but that it resulted from Hunley's exposure to the stress of knowing that he had been in the area of the spill while he was not wearing protective gear, although others in the area were wearing such gear. We conclude, as a matter of law, that it was not reasonably foreseeable that any harm, let alone the particular harm suffered by Hunley, would have resulted from this stress.[6]

---

[6]It is worth noting that this case is distinguishable from *La Pointe*. In *La Pointe*, although the particular harm suffered was not necessarily foreseeable, it was foreseeable that some physical harm would result from being forced to work outdoors in inclement weather. Here, on the other hand, it was not foreseeable that any harm would result to Hunley from the stress of knowing that he was in the area of the toxic spill without protective gear. Furthermore, because security guards are expected to react to situations that would likely cause stress, it was not foreseeable

Therefore, we **AFFIRM** the district court's ruling granting summary judgment to DuPont, but do so on the ground that Hunley failed to raise a genuine issue of material fact with respect to proximate cause, a key element of his *prima facie* case of negligence.

## B.  Assumption of Risk

As an alternative basis for its ruling, the district court found that, even if Hunley had satisfied all four elements of his *prima facie* case, summary judgment was nonetheless proper based on the affirmative defense of assumption of risk. We agree, and find that, in addition to the proximate cause analysis set forth above, the doctrine of primary assumption of risk also supports the district court's ruling granting summary judgment to DuPont.

### 1.  Propriety of District Court's Reliance on Assumption of Risk

As a threshold matter, Plaintiffs-Appellants argue that it was improper for the district court to apply the doctrine of assumption of risk to this case because that affirmative defense was not argued by the Defendant either in its written motion for summary judgment or during oral argument on the motion. We conclude, however, that the district court acted within its authority in relying upon this doctrine. A district court may properly grant summary judgment on grounds not argued in the motion by the parties. *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1150 (6th Cir. 1988) ("Where it is clear there is no genuine issue of material fact, a court may properly grant summary judgment on a ground other than that assigned in the motion."). Therefore, we proceed to consider the merits of the defense under these circumstances.

that stress would cause this type of reaction.

### 2.  Application of the Doctrine

In its opinion, the district court found that Hunley was prevented from recovering against DuPont because he was harmed while performing the very duty that he was hired to perform: delivering the head count to the fire brigade captain. On appeal, Plaintiffs-Appellants assert that the district court erred because the Michigan Supreme Court has determined that the doctrine of assumption of risk is no longer viable as an affirmative defense, except in very specific circumstances. In particular, they state that the doctrine is viable only when the plaintiff was an employee of the defendant and assumed an express contractual assumption of risk for purposes of his employment. They assert that those circumstances are absent here, and that, therefore, the defense cannot apply to bar their claim.

Contrary to Plaintiffs-Appellants' characterization of the current state of the law in Michigan with respect to assumption of risk, we find that the affirmative defense is still viable, and, moreover, that it applies under these circumstances.

In *Kreski v. Modern Wholesale Electric Supply Co.*, 415 N.W.2d 178 (Mich. 1987), the Michigan Supreme Court distinguished between primary assumption of risk, which involves a situation in which the defendant does not owe a duty of care to the plaintiff because the plaintiff agreed in advance to relieve the defendant of a duty of care, and secondary assumption of risk, which involves a situation in which the plaintiff voluntarily encounters a known risk without first manifesting assent to relieve the defendant of liability. *Id.* at 185. The *Kreski* court found that, although *Felgner v. Anderson*, 133 N.W.2d 136 (Mich. 1965), eliminated secondary assumption of risk, primary assumption of risk is still a viable affirmative defense in Michigan. *Id.* It recognized, in particular, that, post-*Felgner*, primary assumption of risk had been relied upon

in *Carter v. Mercury Theater Co.*, 379 N.W.2d 409 (Mich. Ct. App. 1985). *Id.* at 185 n.11.

In *Carter*, a private security guard was shot by two patrons at the movie theater where he had been working. *Carter*, 379 N.W.2d at 410. The security guard brought a negligence action against the theater for failing to prevent the assailants from reentering the theater after they had been ejected. *Id.* After the trial court denied summary judgment to the defendant, the Michigan Court of Appeals reversed, finding that the plaintiff could not recover from the theater because he was injured while performing the very duty that he was hired to perform — providing security for the theater. *Id.*

Similarly, in *Turner v. Northwest General Hospital*, 293 N.W.2d 713 (Mich. Ct. App. 1980), which was relied on by the district court below, a hospital hired a private security company to provide security for invitees of the hospital. The plaintiff's decedent, an employee of the private security company, was shot and killed while on duty at the hospital. In rejecting the plaintiff's wrongful death claim, the *Turner* court stated:

> In this case, defendant hospital, recognizing a duty to safeguard, protect and secure its patients, visitors, doctors and other business invitees, hired an independent security guard company for that purpose. What happened to plaintiff's decedent was the very reason plaintiff's decedent and his employer were hired, i.e., to safeguard against criminal acts of violence. It would be ironic to hold defendant hospital liable to an employee of the very security guard company it hired for protection.

*Id.* at 715.

Relying on both *Carter* and *Turner*, the court in *In re Air Crash Disaster at Detroit Metropolitan Airport on August*

*16, 1987*, 737 F. Supp. 409 (E.D. Mich. 1989), also rejected the plaintiffs' claims based on the doctrine of primary assumption of risk. In *Air Crash Disaster*, private security guards were sent to the scene of a plane crash to secure the area. In a subsequent lawsuit, the guards claimed psychological and emotional injuries from having to gather and identify bodies and body parts of the victims of the crash. *Id.* at 410. The district court dismissed the action, finding that the guards had assumed the risk of the harm that they suffered because the alleged psychological and emotional injuries resulted from their having performed the duties that they were hired to perform. *Id.* at 413-14.

The *Air Crash Disaster* court recognized that neither *Carter* nor *Turner* relied explicitly on the doctrine of assumption of risk. The court found, however, that the rationale underlying those cases was the same rationale underlying the affirmative defense. In particular, the court stated:

> ". . . [it] is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk. In such cases the acquiescence of the servant in the conduct of the master does not defeat a right of action on the ground that the servant causes or contributes to the cause of the injury, but . . . no right of action arises in favor of the servant at all, for, under the terms of the employment, the master violates no legal duty to the servant in failing to protect him from dangers the risk of which he agreed expressly or impliedly to assume."

*Air Crash Disaster*, 737 F. Supp. at 413 (quoting *Felgner*, 133 N.W.2d at 149 n.4) (alterations in original).

Under the reasoning of *Air Crash Disaster*, *Carter*, and *Turner*, which this Court hereby recognizes as an accurate

statement of Michigan law, Hunley is prevented from recovering from DuPont for the harm he suffered while providing the head count to the fire brigade captain. *Air Crash Disaster*, *Carter*, and *Turner* belie Hunley's contention that the doctrine of assumption of risk applies only when the plaintiff was an employee of the defendant and expressly contracted to assume the risk. In each of those cases, as here, the plaintiff was an employee of the independent security company that had been hired by the defendant to provide security services. Moreover, none of those cases required evidence of an express contractual assumption of risk for the doctrine to apply. Rather, in those cases, as here, the private security guards implicitly assumed certain risks based on the nature of the work that they were hired to do.

Thus, application of the doctrine of assumption of risk under these circumstances is proper, and the reasoning underlying that doctrine bars Plaintiffs-Appellants' claim. Hunley was injured while he was performing one of the very tasks that he was hired to perform: providing a head count to the fire brigade captain. Although Hunley could not know the precise location where he would find the fire brigade captain at the time of the spill, it was nonetheless clear that carrying out the duty to deliver the head count necessarily involved encountering a stressful situation that imperiled the plant's security. No matter where the fire brigade captain would be found, he would be dealing with the stress of a chemical spill — the very reason for the head count. Consequently, when Hunley was hired by Pinkerton and was provided with his Site Post Orders requiring him to deliver a head count in the event of a spill, he necessarily assumed the risk of encountering the stress related to such a spill.

Moreover, we note that not just toxic spills, but nearly any situation that requires the presence and action of a security guard, by its nature, embodies a certain degree of stress. Thus, when Hunley was hired by Pinkerton to

provide security for DuPont, he assumed a general risk of encountering and dealing with any and all stressful situations relating to the plant's security. Hunley cannot now recoup damages for harm that was allegedly caused by performing the basic duty that he was hired to perform: encountering a stressful situation relating to the plant's security.

Accordingly, we **AFFIRM** the district court's ruling on the alternative basis of assumption of risk.

## IV.  CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the district court's ruling granting summary judgment to Defendant-Appellee.