IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 16, 2016 Session


**THE ESTATE OF BLAKE B. CUNNINGHAM, BY AND THROUGH
BARBARA CUNNINGHAM v. EPSTEIN ENTERPRISES LLC, ET AL.**


**Appeal from the Circuit Court for Shelby County**
**No. CT00373413     Rhynette N. Hurd, Judge**

_____


**No. W2015-00498-COA-R3-CV – Filed June 30, 2016**
_____


In this premises liability case, the plaintiff appeals from the trial court's grant of summary judgment in favor of the defendants, the manager and owner of an apartment complex. The trial court concluded that the defendants owed no duty to a security guard, who was fatally shot while working at the apartment complex. Although a premises owner generally owes a duty to provide independent contractors with a safe workplace, under the facts of this case, we conclude that the defendants owed no duty to protect the security guard from the criminal acts that resulted in the loss of his life. Therefore, we affirm the grant of summary judgment in favor of the defendants. Additionally, we affirm the award of discretionary costs to the defendants.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., joined. J. STEVEN STAFFORD, P.J.,W.S., filed a concurring opinion.

Linda Lynn Walls Holmes, Memphis, Tennessee, for the appellant, Barbara Cunningham.

Lacey Adair Bishop, Richard Glassman and Whitney Boshers Hayes, Memphis, Tennessee, for the appellees, Epstein Enterprises, LLC, and Louis and William Epstein, LP.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Tragically, on October 14, 2012, Blake B. Cunningham, an armed security guard, died while providing security at the Cherry Crest Apartments in Memphis, Tennessee. Criminals, apparently fleeing from a nearby apartment complex, shot and killed Mr. Cunningham. As described in discovery in the subsequent premises liability case:

> Shots were fired at Apartment Complex directly across from Cherry Crest. Shots at [the] security officer there. Four (4) people fled across the street to Cherry Crest. Entered property as there was no fence or central entrance. Two (2) people ran through the courtyard either firing a gun or started firing a gun at Mr. Cunningham in the darkened area of the courtyard. One intruder was shot in the head, Mr. Cunningham received multiple gunshots to the chest.

At the time of his death, Mr. Cunningham worked for Allegiance Security Group, LLC. Allegiance provided security at Cherry Crest Apartments under a Service Agreement with the apartment manager, Epstein Enterprises, LLC. The Service Agreement included language in which Allegiance disclaimed certain responsibilities. Specifically, the Service Agreement provided as follows:

> It is specifically understood that [Allegiance] has not reviewed the security requirements of the Client, but is only providing the number of personnel, armed or unarmed, and hours, as requested by the Client. [Allegiance] makes no representations that the security requested is reasonably adequate for the Client's purposes. The Client is relying upon its own knowledge and investigation as to the number and type of security personnel required.

On August 28, 2013, Barbara Cunningham,[1] the widow of Mr. Cunningham, filed a Complaint for Damages against, among others,[2] Epstein Enterprises. Ms. Cunningham alleged that Epstein Enterprises was negligent in failing to provide Mr. Cunningham with a safe workplace and failing to act reasonably to prevent foreseeable acts. On October 28, 2013, Ms. Cunningham filed an amended complaint adding as a defendant the owner of the apartment complex, Louis and William Epstein, LP (together with Epstein Enterprises, LLC, the "Epstein Entities"), but largely reiterating the same substantive allegations and making the same claims as the original complaint.

---

[1] Specifically, the complaint provides that it was filed by the "Estate of Blake B. Cunningham, Deceased, by and through Barbara Cunningham, individually."

[2] Ms. Cunningham also sued two individual defendants, Louis Epstein and William Epstein. However, the parties later agreed to the dismissal of the claims against the individual defendants with prejudice.

On November 5, 2013, the Epstein Entities filed their answer to the amended complaint, generally denying the allegations. Also, the Epstein Entities alleged, among other things, that Ms. Cunningham failed to state a claim upon which relief may be granted, that an intervening or superseding act proximately caused the death of Mr. Cunningham, and that the Epstein Entities could not have reasonably foreseen the incident. The parties conducted discovery, and at least two depositions were taken, including that of Ms. Cunningham on July 28, 2014, and Samuel H. Epstein, a member of Epstein Enterprises, on January 22, 2015.

On December 11, 2014, the Epstein Entities filed a motion for summary judgment. In their motion, the Epstein Entities argued that they did not owe a duty of care to Mr. Cunningham because the risk by which he was fatally injured was inherent in the performance of his duties as a security guard. In support of their motion, the Epstein Entities also listed the following facts that they contended were material and undisputed:

> 1. [Mr.] Cunningham, the deceased, was a licensed security guard employed by [Allegiance], beginning on April 28, 2010.
>
> 2. At all material times, Epstein [Enterprises] contracted with Allegiance to provide security for Cherry Crest Apartments.
>
> 3. Epstein [Enterprises] managed Cherry Crest Apartments at the time of the incident.
>
> 4. Pursuant to the security contract, Allegiance provided an armed security guard who patrolled the premises of Cherry Crest Apartments.
>
> 5. The security contract provided that Allegiance was an independent contractor of Epstein Enterprises and that all security guards were employees of Allegiance.
>
> 6. At some point prior to October 14, 2012, Mr. Cunningham began providing security for Cherry Crest Apartments.
>
> 7. On October 14, 2012, Mr. Cunningham was performing his duties as a security guard on the premises of Cherry Crest Apartments.

8. Mr. Cunningham was fatally shot during a confrontation with criminal actors during the performance of his duties at Cherry Crest Apartments.

9. Ms. Cunningham filed a workers' compensation claim, based on the subject incident, against [Allegiance], which was approved.

(citations to record omitted.)

Ms. Cunningham filed a memorandum in response to the motion for summary judgment on February 18, 2015. Significantly, Ms. Cunningham did not respond to each of the undisputed material facts cited by the Epstein Entities. Instead, Ms. Cunningham stated in her memorandum that she did "not dispute Defendants' Statement of Undisputed Facts in support of its Motion but since this is a motion on a point of law only this does not matter for the purposes of this Motion." Consistent with this view, Ms. Cunningham also did not submit additional facts she contended were material or file any countervailing affidavits.

In her opposition, Ms. Cunningham argued that the Epstein Entities owed Mr. Cunningham a duty as an employee of an independent contractor working within the bounds of an invitation to perform work. According to Ms. Cunningham, the fact that her husband was engaged in allegedly "inherently dangerous work" did not preclude the existence of a duty on the part of the owners or occupiers of land. Ms. Cunningham asserted that the Epstein Entities' argument that Mr. Cunningham purportedly assumed the risk spoke to the element of breach, not duty. Ms. Cunningham further asserted that the criminal acts against Mr. Cunningham were foreseeable, and therefore, the Epstein Entities owed a duty to protect Mr. Cunningham from such acts. Finally, Ms. Cunningham claimed that the Epstein Entities assumed a duty to Mr. Cunningham, without offering any basis for the claim.

The trial court conducted a hearing on the Epstein Entities' motion for summary judgment on February 27, 2015. In addition to arguing that the Epstein Entities owned her late husband a duty, Ms. Cunningham orally requested additional time to conduct discovery. At the conclusion of the hearing, the court announced that it was granting the Epstein Entities' motion.

On March 11, 2015, the trial court entered a written order concluding that the Epstein Entities owed no duty to Mr. Cunningham to protect him from a risk inherent in the task for which he was hired to perform. Additionally, the trial court found that additional discovery was not warranted. The following day, March 12, 2015, Ms. Cunningham filed her notice of appeal.

Subsequently, on March 27, 2015, Ms. Cunningham filed her designation of the record on appeal. The Epstein Enitites filed their own designation of the record on April 8, 2015, including the transcript of the hearing of the motion for summary judgment. On June

4

5, 2015, Ms. Cunningham filed a Notice of the Inclusion of her Motion Pursuant to Rule 201 for Judicial Notice of Crime Scene Records in the record on appeal. On June 12, 2015, Ms. Cunningham filed a Second Notice of Inclusion of Pleadings in the Designation of the Record, referencing the Epstein Entities' March 31, 2015 motion for discretionary costs, an affidavit of costs, an exhibit to the motion for discretionary costs, the Epstein Entities' response in opposition to Ms. Cunningham's first Notice of Inclusion, Ms. Cunningham's Response to the motion for discretionary costs, the trial court's order granting in part and denying in part the motion for discretionary costs, and the order denying Ms. Cunningham's Motion Pursuant to Rule 201 for Judicial Notice of Crime Scene Records. Ultimately, the trial court denied Ms. Cunningham's requests for inclusion of additional items in the record on appeal beyond those set forth in her original designation.

## II. ANALYSIS

Ms. Cunningham raises two issues on appeal. First, she argues that the trial court erred in granting summary judgment to the Epstein Entities. Second, she argues that the trial court erred in awarding discretionary costs to the Epstein Entities.

### A. STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04 The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.* Our Supreme Court recently explained the burden-shifting analysis to be employed by courts tasked with deciding a motion for summary judgment when the movant does not bear the burden of proof at trial:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its

motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264-65 (Tenn. 2015), *cert. denied*, 84 U.S.L.W. 3547 (U.S. May 23, 2016).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

## B. DUTY OF CARE

On summary judgment, the Epstein Entities argued and the trial court agreed that there was no legal duty to protect Mr. Cunningham from the violent criminal acts that resulted in his death. A claim for negligence cannot succeed in the absence of any of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *Green v. Roberts*, 398 S.W.3d 172, 176-77 (Tenn. Ct. App. 2012) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Duty, the first element of the claim, is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.*

6

The existence or nonexistence of a duty owed by the defendant to the plaintiff is a question of law for the court to decide. *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). In determining this issue, a court considers:

> ". . . whether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others . . . . This is entirely a question of law to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined only by the court. . . . A decision by the court that, upon any version of the facts, there is no duty, must necessarily result in judgment for the defendant. A decision that if certain facts are found to be true, a duty exists, leaves open the other questions now under consideration [concerning the existence of negligence]."

*Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 859 (Tenn. 1985) (quoting Prosser and Keeton, Torts, § 53, p. 356 (5th ed. 1984)). Although the existence of a duty remains a question for the court, the nature or scope of the duty may depend on the resolution of a factual issue. *See Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 821 (Tenn. 2008) (reversing grant of summary judgment based on genuine issues of material facts necessary to determine the nature of the duty of care owed to the plaintiff). In deciding whether a duty exists, the appellate court must take a fresh look at the record, "viewing the evidence in a light most favorable to the . . . nonmoving party, allowing all reasonable inferences and discarding all countervailing evidence." *Bradshaw*, 854 S.W.2d at 870.

Generally, "an owner or occupier of premises has a duty to exercise reasonable care with regard to social guests or business invitees on the premises." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). Similarly, an "owner generally owes an independent contractor hired to perform work on the premises a duty to provide a reasonably safe place in which to work." *Blair v. Campbell*, 924 S.W.2d 75, 76 (Tenn. 1996). The "duty includes the specific responsibility of either removing, or warning the independent contractor of, any hidden or latent dangers on the property." *Id.* However, our courts have acknowledged an exception to the general duty to provide a reasonably safe place in which to work for dangers that "arise from, or are intimately connected with, defects of the premises or of machinery or appliances located thereon which the contractor has undertaken to repair." *Shell Oil Co. v. Blanks*, 330 S.W.2d 569, 571 (Tenn. Ct. App. 1959). The exception recognizes "that one assumes the risk of a known danger or of an undertaking which is inherently dangerous." *Id.* For ease of reference, we will refer to this exception to the general duty of property owners or occupiers as the "independent contractor exception" or simply the "exception."

Although the exception was recognized by our Court in *Shell Oil v. Blanks* in the Fifties, our Supreme Court only first applied the independent contractor exception in the Nineties. *See Blair v. Campbell*, 924 S.W.2d 75 (Tenn. 1996). In *Blair v. Campbell*, an independent contractor was injured while performing repair work on the defendant's roof.

*Id.* at 76.  In affirming a grant of summary judgment to the defendant, the court held that the defendant owed no duty to the independent contractor because he was injured performing a task which involved a risk inherent in the task he was contracted to perform.  *Id.* at 77.  As the court explained:

> The application of *Blanks* to the case before us yields a clear result.  It is undisputed that [the contractor] was specifically asked by [the premises owner] to repair the porch roof because it was leaking.  Although [the contractor] was not told of the extent of the damage to the roof, and perhaps could not have known until he climbed the ladder, this is immaterial under *Blanks*: the repair contract itself is sufficient to put the contractor on notice of a defect in the premises, and it is the contractor's responsibility to determine the extent of the defect.  The case before us obviously falls within the exception enunciated in *Blanks*; therefore, pursuant to that case the owner here was under no duty to provide a reasonably safe workplace to the contractor.

*Id.*

Citing to *Blair v. Campbell*, the trial court in this case found that the injuries Mr. Cunningham suffered were inherent in the work that he was contracted to perform as a security guard. Therefore, the court concluded that the independent contractor exception applied.  That being the case, Ms. Cunningham could not establish the first element of a negligence claim: a duty of care owed by the defendant to the plaintiff.

Ms. Cunningham argues that the independent contractor exception should not apply. She notes that, in Tennessee, the exception has been applied only to contracts for repair, and therefore, the exception may not be extended to a security guard.  Although we agree that the exception has not been extended previously to security guards, "closely related" to the independent contractor exception is "the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees 'assumed the risk.'" E.H. Schopler, Annotation, *Duty of Owner of Premises to Furnish Independent Contractor or His Employee a Safe Place of Work, Where Contract is for Repairs*, 31 A.L.R.2d 1375, 1382-83 (1953) (footnotes omitted).  This rule is quite similar to the "traditional" rule for premises liability:

> as expressed in § 340 of Restatement, Torts (1934), and in the language used by the courts in many cases, a landowner is absolved from liability to entrants for harm caused by a dangerous condition on his land, of which the entrant knew and realized the risk, or which was obvious.  This result was reached under various theories, such as lack of a duty of care on the landowner's part, or contributory negligence of, or assumption of risk by, the injured person.

8

Ernest H. Schopler, Annotation, *Modern Status of the Rule Absolving a Possessor of Land of Liability to Those Coming Thereon for Harm Caused by Dangerous Physical Conditions of which the Injured Party Knew and Realized the Risk*, 35 A.L.R.3d 230, 236 (1971) [hereinafter "Schopler, *Modern Status*"] (footnotes omitted).

Courts in other jurisdictions, when confronting a similar factual situation to the case before us, have applied some variation of the traditional rule to insulate land owners from liability. *See Hunley v. DuPont Auto*, 341 F.3d 491, 503 (6th Cir. 2003) ("[The plaintiff security guard] cannot [] recoup damages for harm that was allegedly caused by performing the basic duty that he was hired to perform: encountering a stressful situation relating to the [defendant's] security."); *Wallace v. Tri-State Motor Transit Co.*, 741 F.2d 375, 377 (11th Cir. 1984) (No duty to security guard injured while manually opening gate where guard was aware of danger); *Atlanta Braves v. Leslie*, 378 S.E.2d 133, 135 (Ga. Ct. App. 1989) ("Leslie, by accepting employment as [a] security guard, assumed the risk that he would have such encounters on the stadium premises. Leslie was, in effect, hired to provide an element of the very security that he alleges was negligently lacking."); *Echazabal v. El Toro Meat Packing Corp.*, 506 So.2d 1100, 1101 (Fla. Dist. Ct. App. 1987) (per curiam) ("[T]he employee of an independent contractor cannot maintain a cause of action against a property owner where, as here, the precise duty for which he was employed (guarding the premises) resulted in his injury.") (citing *McCarty v. Dade Div. of Amer. Hosp. Supply*, 360 So.2d 436 (Fla. Dist. Ct. App. 1978)). However, in at least one instance, Tennessee has moved away from the traditional rule and toward the modern trend. *See Coln v. City of Savannah*, 966 S.W.2d 34, 42 (Tenn. 1998) ("We agree with the rationale of the majority of courts which have limited or restricted the traditional 'open and obvious' rule in favor of the Restatement [(Second) of Torts, § 343A] approach."), *modified by Cross v. City of Memphis,* 20 S.W.3d 642 (Tenn. 2000).

The "modern trend" represents a movement "toward a general rule, as expressed in § 343A(1) of Restatement, Torts 2d (1965), under which, notwithstanding an entrant's knowledge of a dangerous condition or its obviousness, a landowner is liable for harm resulting therefrom, if the landowner should anticipate the harm despite such knowledge or obviousness." Schopler, *Modern Status*, 35 A.L.R.3d at 236. In the words of our Supreme Court, analyzing whether a legal duty arises requires "balancing foreseeability and gravity of harm with feasibility and availability of alternatives that would have avoided the harm." *Coln*, 966 S.W.2d at 42; *see also McCall*, 913 S.W.2d at 153. "The principles stated in the Restatement (Second) of Torts, § 343A[3] relate directly to foreseeability and facilitate consideration of the duty issue." *Coln*, 966 S.W.2d at 42.

---

[3] The Restatement (Second) of Torts § 343A(1) states the rule as follows: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965).

9

Even though Tennessee has followed the modern trend and adopted the principles stated in the Restatement (Second) of Torts, § 343A, the independent contractor exception has not been supplanted. In 2007, our Supreme Court addressed the application of the exception to a pair of electricians in *Bennett v. Trevecca Nazarene University*, 216 S.W.3d 293 (Tenn. 2007). The supreme court concluded that the independent contractor exception did not apply to shield Trevecca Nazarene University from liability, although the electricians were injured by a high-voltage electrical explosion while attempting to repair switchgear on campus. *Id.* at 299. Based on the facts alleged by the electricians, the court went on to hold that tort principles "impose[d] a duty of reasonable care on a premises owner to provide accurate information to an independent contractor if the owner provides specific information germane to the repair after engaging the contractor." *Id.* at 300.

We conclude that the independent contractor exception can be extended to security guards. Yet, from *Bennett v. Trevecca Nazarene University*, we gather that, even though an independent contractor faces a risk that is inherent in the job, the premises owner or occupier is not, *ipso facto*, relieved of a duty of care. *See id.* (Sometimes the contract with the independent contractor "is simply an inadequate framework in which to analyze whether a premises owner has a duty of reasonable care.") For example, the premises owner or possessor may voluntarily assume a duty of care to the independent contractor. *See id.* Ms. Cunningham claims that such is the case here. She argues the Service Agreement[4] imposed an affirmative duty upon the Epstein Entities to determine the appropriate amount of security measures necessary to ensure the safety of those that visit its premises, including Mr. Cunningham.

We disagree. As noted above, the Service Agreement included language in which Allegiance disclaimed certain responsibilities. Specifically, the Service Agreement provided that Allegiance "makes no representations that the security requested is reasonably adequate" and that Epstein Enterprises, in contracting, was "relying upon its own knowledge and investigation as to the number and type of security personnel required." In context, the language serves the purpose of disclaiming any contractual obligation on the part of Allegiance to Epstein Enterprises to ensure a safe environment on the premises. Epstein Enterprises does not contractually assume any legal duty to the employees of Allegiance, and it makes no representations to Allegiance regarding the premises or criminal activity on or

---

[4] In his concurrence, our learned colleague declines to address the impact of the Service Agreement on the ground of waiver. In her memorandum in response to the motion for summary judgment, Ms. Cunningham did not reference the Service Agreement as the basis for her claim of an assumed legal duty. While Ms. Cunningham did not identify the Service Agreement in support of her argument below, we nonetheless find it appropriate to consider the language of the Service Agreement in making the determination of whether a duty existed. As the parties moving for summary judgment, the Epstein Entities had the burden of production, and to satisfy that burden, they relied on the Service Agreement, referencing it in three of their nine statements of material, undisputed facts. The Service Agreement is the framework in which they ask us to analyze whether they have a duty of care. *See Bennett*, 216 S.W.3d at 300. The Epstein Entities also attached a copy of the Service Agreement as an exhibit to their filings in support of their motion for summary judgment.

10

near the premises.  Further, the Service Agreement does not specify what constitutes "reasonably adequate" security or what security personnel is "required."

Ms. Cunningham counters that the security required by the Service Agreement is dictated by what the Epstein Entities knew or should have known by an investigation of security risks.  Even if that were the case, we could not assume that the Epstein Entities' duty extended to shielding Mr. Cunningham from every risk.  Ms. Cunningham leaves us to wonder what knowledge the Epstein Entities had or should have had of the risk of criminal activity[5] that she argues should have impacted "the number and type of security personnel required."

Finally, Ms. Cunningham requests the opportunity to present proof of the Epstein Entities' knowledge.  She argues that the trial court improperly granted summary judgment rather than permitting her to conduct additional discovery.  As stated above, after the moving party makes a properly supported motion, the burden shifts to the nonmoving party to produce evidence of specific facts establishing that a genuine issue of material fact exists. *Rye*, 477 S.W.3d at 265. The nonmoving party may satisfy this burden by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Martin*, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).  Here, Ms. Cunningham did not submit an affidavit as required by the rule, nor did she state in response to the Epstein Entities' motion for summary judgment that she could not present by affidavit facts essential to justify her opposition to the motion.  *See* Tenn. R. Civ. P. 56.07.  Instead, she argued at oral argument that "discovery from the police department" was necessary and explained that she needed "more time for more discovery" in the form of police records and information about prior crimes on the premises.  Under these circumstances, where the party not moving for summary judgment has failed to comply with

---

[5] Our concurring colleague states that Ms. Cunningham "admitted" that the Cherry Crest Apartments were located "'in a high crime area' and that it was 'foreseeable . . . that criminal attacks could occur due to incidences of crime that ha[d] occurred at the [premises] and within close proximity[.]'"  There is no proof of this in the record.  Ms. Cunningham made such allegations in both her complaint and amended complaint, but the Epstein Entities denied the allegations.  Ms. Cunningham "may not rest upon the mere allegations" of her complaint.  *See* Tenn. R. Civ. P. 56.06.

11

the rule, we find no error in the trial court's denial of the request for a continuance to conduct further discovery.[6]

### C. AWARD OF DISCRETIONARY COSTS

Ms. Cunningham argues that the award of discretionary costs to the Epstein Entities was improper because summary judgment was improper. She does not challenge the propriety of any of the costs requested by the Epstein Entities. Because we affirm the trial court's grant of summary judgment, we affirm the trial court's award of discretionary costs.

### III. CONCLUSION

Based on the foregoing, we conclude that the Epstein Entities owed no legal duty to Mr. Cunningham, and therefore, the trial court properly granted summary judgment. We also affirm the award of discretionary costs. This cause is remanded to the trial court for such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

---

[6] Ms. Cunningham also asserts that the trial court erroneously denied her motion, filed after the summary judgment hearing, for the trial court to take judicial notice of police records for the Cherry Crest Apartments. Nothing in the record indicates why Ms. Cunningham was unable to obtain these records prior to the summary judgment hearing, and she offers no explanation in her appeal. More importantly, Ms. Cunningham does not raise the trial court's denial of her motion for judicial notice as an issue in the statement of the issues section of her appellate brief. *Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011) ("An issue not raised in an appellant's statement of the issues may be considered waived.") (citing *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009)). Therefore, we consider the issue waived.